Mr. Woolley will take the case under advisement. Mr. Woolley will take the case under advisement. Hardware v. United States Home Products 2009-12-80 Mr. Eikenson, since your appellant will hand you first. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I am Fred Eikenson, Counsel for the Appellant Home Products International and American Manufacturer of Ironing Boards or Ironing Tables. This case arises out of the Commerce Department's third administrative review of the anti-dumping duty order on these products. In that review, Commerce found that the Chinese exporter, since Hardware, had submitted information that was not reliable, that was false, that was unbelievable. We're basically familiar with the fact, but why isn't it governed by the rule of typo, which follows Zenith? All right, Your Honor, I will talk about the typho case. There's no question that typho involves similar facts to our case. In typho, as in our case, the American manufacturer has taken an appeal from the grant of a preliminary injunction against liquidation by the trial court, and the arguments made by type by the American manufacturer in that case, Gleason, were very similar to the arguments we made. Essentially, that there was no showing of irreparable harm, immediate and irreparable harm, to the move-on, the foreign exporter. And the reason for that was the foreign exporter is not the importer of records, is not affiliated with the importer of records. Yeah, but the problem for you is this Court rejected all of those. Well, I'm about to distinguish. In the typhus case, this Court found that there was harm to the foreign exporter because the Court presumed that there was an agreement to reimburse the dumping duties that the importer would have to pay. And that was the finding by the Court, or the presumption by the Court. And I can assure you that in our case, there is no reimbursement agreement from SINCE Hardware to the importers who have to pay. In the record in our case, we showed that SINCE Hardware stated it didn't even know the identities of the U.S. importers of records. Well, the Court said, if I'm understanding you correctly, what the Court said was typhus may have the responsibility to reimburse or compensate domestic abuse, but it didn't necessarily conclude that it did. In the next sentence, Your Honor, the Court said, in other words, this Court acknowledges the distinct probability that typhus will ultimately incur the charge or lose customers. So I suppose one could say there wasn't an explicit finding, but there was certainly a finding of probability. And in our case, there can be no such finding of probability. And to complete my answer, I'm not sure the Court is aware of this, but yesterday, the appellant in typhus filed a petition for rehearing or rehearing-en banc, in which they made the argument that, as a matter of fact, there was no reimbursement in the typhus case either. And there is really very good reason for assuming there's no reimbursement. Under the anti-dumping law, if a foreign exporter reimburses a U.S. importer for dumping duties, that is viewed as additional dumping, which will lead to additional duties. And the reimbursement is effectively prohibited by the anti-dumping regulations. However, we were not – I didn't come here this morning for the purpose of criticizing typhus. I am bound to accept typhus. It's the – No, and I appreciate. I mean, I think it's very responsive to the kinds of questions we have. But getting back to our case, I mean, there was no – you're not critical of the CIT in our case. They didn't make any such finding. They just – the Court of International Trade here just analyzed the four factors and said, in his discretion, he decided an injunction was warranted, correct? He didn't rely on the fact – an erroneous fact-finding that there was money owed to the – No, the lower court didn't discuss that. This – Right. This came anew from this court. That is, the whole discussion of reimbursement and money being paid by the Chinese exporter to U.S. importers came up for the first time in this court's – And that's not a factor that the Court of International Trade, in our case, relied on. They simply relied on just evaluating the four factors, particularly public interest. Correct. And we addressed the court's reasoning in our main brief and in our reply brief, and we argued that there was no showing by the lower court that there was indeed irreparable harm. The lower court said, if the American manufacturer loses his opportunity to challenge a duty for being too low, then the foreign manufacturer should be in a similar position. But that doesn't go to the question of how – where is the harm? The harm certainly is felt by the importer. The importer has to ante up, has to pay that money. The foreign exporter could be harmed by a high duty rate, as in this case, not because of the assessment on duties of a total stranger to him, but on future events. There has to be a deposit rate. Well, under your argument, I take it, what you say should have been done in this case is the suit should have been dismissed for lack of standing, perhaps. I don't think it was lack of standing. It's definitely not lack of standing. Because – I thought, why isn't there lack of standing if they haven't been injured? Because I'm not suggesting they're not being injured. They're not being injured by the assessment of duties. The reason there is standing is, standing is given to interested parties, which are defined by statute. But let me – see, what bothers me is I take it it's common ground that once these duties are liquidated, even if it were ultimately held that they had been improperly imposed, there's no way anyone can get them back. But this Court has already ruled – No, is that correct? That is correct, except that that doesn't moot the case. That doesn't end the case. This Court has ruled that even if duties are liquidated, there still are issues that survive the liquidation. For example, the whether or not the deposit rate should remain in effect is a decision that if the plaintiff wished could challenge. Additionally, there have been cases in this Court where American manufacturers have elected not to seek an injunction against liquidation because the concern of the American manufacturer – this was in the Kurdell case – the concern of the American manufacturer was you want to be sure that there were not three successive years where the foreign respondent had de minimis or zero margin because then he would have been eligible for revocation. So in that case, this Court agreed with the American manufacturer over the objections of the United States and the foreign respondent that the controversy survives the liquidation. So in the absence of an injunction in this case, what survives for the appellee here? Well, the appellee is unhappy with the way in which the Commerce Department determined what the duty rate should be. The duty rate does not just apply to past entries. It applies to the deposit on imports going forward. So that survives. That survives, but they can't recoup for past entries. Well, it's not for them to recoup because it's not their money. The importer could have been a party in this case and could have sought liquidation. Our argument – I mean injunction – our argument would be completely different because the importer would be harmed. He would be irreparably harmed if there's liquidation. The foreign manufacturer is not. And the question then remains, does this case become moot? And this court has stated in analogous circumstances that it does not become moot. So the only issue in this case, I take it, is the propriety of the duties imposed in the third administrative review. The first two, there was nominal duty imposed. You are correct, that is not involved in this case. Now and if in the future there may be a fourth or a fifth administrative review, I don't know how long it goes on, how long the order is effective. Your Honor, today, if imports come in from Sins Hardware, they have to pay 157.68% by reason of this Congress Department's decision in the third review. But that can be re-litigated, can't it, and determined in another administrative review? A different issue would be re-litigated. What would be litigated in another review is how much duty should have been assessed on the importer. We're talking now about current business operations. Sins Hardware wants to ship ironing boards to the United States importer. That importer is going to have to pay 157.68%, and the chances are there's going to be very, very few imports under these circumstances. So Sins Hardware could try to convince the court that the Congress Department's decision was wrong, that the duty should be reduced. Then a new deposit would go into effect if they are successful, and that new deposit could help them in their current business. That is a function of the third review results, Your Honor. The third review results were not just limited to the assessment issue. I see that my warning light has come on. Well, finish the answer. Okay, well, that responds to Judge Friedman's question from my perspective. I don't know if I've answered it fully. But I did want to make one other point before I sat down, and that is, again, how we distinguish our case from the Typha case. In Typha, because this court found irreparable harm, the court applied a sliding scale and essentially gave Typha a pass on likelihood of success on the merits. The court said that I don't see anything in Typha's argument that convinces us that they're right, but nor do I see anything convincing in the American manufacturer's argument either. And given that we apply a sliding scale, this is sufficient. Our case is different. We have a very strong argument that there's no case on the merit. In our case, the Commerce Department applied a margin that was based on an actual calculated margin for another Chinese manufacturer in a previous segment. There's a lot of case law that supports the use of prior margins in this manner. Additionally, we showed in our papers that we submitted a very lengthy case brief in which we cited statute, judicial precedent, administrative precedent, supporting this position. The other side just said, no, we're wrong, but they did not cite a single legal authority. The Commerce Department agreed with us, and they used 157.68% margin. I don't think there's any realistic way to find that there is a likelihood of success on the merits, no matter how liberal a standard you wish to impose. Thank you. Mr. Eikenson, we'll save the remainder of your rebuttal time. Thank you, Your Honor. Mr. Silverbrand, you've agreed to split your time with Mr. Winslow? Yes, Your Honor. OK, well, I'll let you know when you're approaching the dividing point, but I'll leave it to you to work it out. Please proceed. Thank you, Your Honor. May it please the Court. TIFA is clearly controlling. There's no way around it here. Well, maybe so, maybe not. I mean, the other side pointed out to a portion of the opinion, and I read it kind of as he did, which is that the Court seemed to rely on the fact that they would have a distinct – the Court acknowledges the distinct probability that TIFA will ultimately incur the charge or lose customers. Thus, the trial court did not clearly err in determining they would suffer immediate and irreparable harm. Where is the comparable fact-finding in your case? Well, Your Honor, I respectfully disagree that the Court relied on that for its finding that there would be irreparable harm. At 1380… Well, it's kind of hard to get around the word thus right following what I said. I mean, it says, thus, the trial court did not clearly err in determining they would suffer irreparable harm without an injunction. Right, but if you go two sentences up in the opinion, Your Honor, the Court first stated, though Gibson makes the dubious contention that TIFA will suffer no harm because it did not directly post any of the cash deposits for the entries, these potential overcharges would remain a part of any transaction between TIFA and its domestic importers. Similarly, here, the transactions at issue do remain a part of the relationship between SIN's hardware and its importers. Is there a distinct probability that they'll incur the charge or lose customers? Is there anything in the record with regard to that fact-finding? There's certainly nothing in the record to that, Your Honor, but it stands to reason that there would be a distinct probability that they would lose customers if… …that they would have to cover any charges. I don't believe there's any evidence of reimbursement, Your Honor. But you think the losing customers is comparable? I think the losing customers is comparable, and I think the TIFA court based its finding of irreparable harm not on that. That was just a portion that was responding to Gleason's, quote, dubious contention. Rather, TIFA based its opinion, the TIFA court based its opinion on Zenith, which held that a case can and most often will become moot, an anti-dumping case, if an injunction is denied. It's a statutory right that is granted to importers, exporters, and domestic affected parties that participated in the administrative review to participate in a challenge to the anti-dumping duty proceeding. That is what SIN's hardware is doing here. Well, the part that becomes moot is the retroactive part, not the prospective part, right? No, not necessarily, Your Honor. Once a new administrative review is completed, if there's no injunction and the entries have been liquidated, the case is moot. But isn't it correct that unless and until there is a liquidation of these duties, duties set in the third administrative review will have to be deposited on any new imports? On any new imports until there is another administrative review conducted by the Department of Commerce, Your Honor. Is there an administrative review, is the fourth administrative review now going on? I believe there was a one-year deferral, so there will be the equivalent of what would have been the fifth administrative review, which will be completed next year, I believe, Your Honor. And that will set a new deposit rate. If there is no injunction and this case is not completed at this point, all entries will either be liquidated by customs or will liquidate by operation of law pursuant to statute. And therefore, the case will become moot. All entries during the period of the third administrative review, is that right? All entries, yes. Yes, Your Honor. They're not going to liquidate any entries after the third period of review? Not if those are challenged, Your Honor, in an administrative review and a subsequent judicial challenge. However, since hardware could be put in the untenable position of constantly going to court and having its case mooted because no injunction was granted, and you'd have an endless cycle of since filing cases in the CIT, no injunction granted, and then all the entries get liquidated with no injunction. No, we don't know there won't be any injunction granted. Maybe, who knows what's going to happen? Yes, Your Honor, I was just... Well, it sounds to me that the government here is advocating a kind of per se rule. In every one of the cases, the statement you had to compel us to affirm the injunction here was, if not, all of this is going to be mooted by liquidation. Well, that's true in each and every one of these proceedings. We don't need to apply four factors to figure that out if that's the end game that requires an injunction in this circumstance. No, Your Honor, because the court not only must look at the potential for irreparable harm, the court must look at whether there's a substantial probability of success on the merits. And here, what we are advocating is that in certain cases, there is no possibility of any success on the merits. And for instance, the CIT last week denied an injunction, which we did not consent to, because the plaintiffs merely raised an issue that has been repeatedly litigated in this court and, in fact, denied. So the government is conceding there's at least a substantial claim here that has a likelihood of success on the merits? There is a statutory right for Sins Hardware to bring the claim it has. It has stated a claim in its complaint. We don't concede that there's a substantial likelihood of success on the merits. Well, wait a minute. You say he has a statutory right to bring his suit, and therefore he's entitled to an injunction, even though the claim should turn out, when you look at the merits, to be frivolous? No. It has to be a substantial sort of claim. I mean, it has to be a claim that has some semblance of substance to it. Yes, certainly, Your Honor. And we would never consent to an injunction if the complaint failed to state a claim, if there was lack of jurisdiction, if the complaint only stated a claim that had been repeatedly litigated and denied by this court, such as the case I was referring to last week in the CIT. There are many instances in which the government will not consent to an injunction. But when we do, we believe that the plaintiff, although may not prevail in this claim, has, in fact, stated a claim which is litigable in both the CIT and this court. So what's the government's rule, then? A preliminary injunction follows in the absence of the claim being frivolous? What's the rule? I mean, it seems to me you're kind of rewriting the four factors. I mean, you are really advocating a pretty broad, black-lit, you know. No, I think it's something certainly greater than a frivolous standard, Your Honor. Because I don't think a plaintiff that files a complaint that contains allegations that, for instance, in which the plaintiff failed to exhaust its remedies is necessarily frivolous. But we would certainly oppose an injunction in that case. I don't think it's necessarily frivolous for a plaintiff to file a claim in which it is making a novel argument on an issue previously decided by this court. But we would oppose an injunction in that case. And the irreparable harm here is that they lose their ability to challenge this? Yes. Is that how you would articulate the irreparable harm? The irreparable harm is that if these entries are liquidated, there's the distinct possibility that Sins Hardware will lose any chance to continue this case. Moreover, they do, in fact, lose any ability for the importers to recover the deposits, although that money would not necessarily be reimbursed to Sins Hardware. How does the fact that the importers lose any opportunity to recover the money adversely affect the manufacturer? These are the... I mean, psychologically it may, and customers may say, we don't want to deal with you because you're not standing behind us. But I don't understand as a legal matter how you say that if you're going to lose money as a result of something, I'm injured. Because when a manufacturer is seeking customers, those customers are assuming there's either going to be a anti-dumping duty rate or a lower anti-dumping duty rate. And if Sins Hardware is unable to challenge that rate, it may, in fact, lose these customers in the future. They have every opportunity to go to another producer of similar merchandise. So that rises to the level of irreparable harm? No. The zenith question rises to the level of irreparable harm, Your Honor. It's the fact that Sins Hardware will, in fact, lose any ability to... most likely would become moot before the legal challenge is completed. It rises to irreparable harm, Your Honor. For these reasons, and those stated in our brief... Wait a second. I have to ask you one question. Yes, Your Honor. Is it your position that if these duties were liquidated, this case, the issue in this case would be moot? The case would become moot as soon as a new administrative review was completed, Your Honor. Yes. Thank you, Your Honor. Thank you, Mr. Silverbrand. Do we hear from Mr. Whistler? Good afternoon. May we please report? I'm Ron Whistler from the law firm of Artie Schubert, and we represent Sins Hardware. It's our view that the Taifa case in affirming zenith... that there's no question of irreparable harm in this case. And everyone's been focusing on the money. It's not the money. It's my client's right to judicial review. That's what the irreparable harm is. We would be denied our right to judicial review. You have to make an argument, a stated claim of substance, don't you? Yes, and we did that. And that's what I would like to focus on. That's what I'm curious about. What is your basic claim, stated simply? Okay. In the complaint, there were three complaints. One is the factual determination that adverse facts available should be applied. Okay, that's one. Two is even if adverse facts available is applied, one only partial adverse facts available should have been applied to the information that was tainted. But information that was not subject to the conduct that is being complained about, such as the US price information and the factors of production information, that should not have been thrown out. And also the information regarding separate race and status should not have been thrown out. That was the second. And then the third one is even if the court does not believe that partial facts available should have been used, the last claim we raised was when they apply facts available, they apply to since hardware, the China-wide rate, the 157% rate. And that rate is to be applied to companies that are not privately owned and that do not operate free from government control. And the administrative record in this case shows that since hardware, not only in this review, but other in the first two previous reviews in the initial investigation, operated free from government control. So we're saying even if facts available should be applied totally, the use of that 157% rate was not correct and an alternate rate should be used. So there are, we are raising substantial legal issues. So given that there's a very high degree of injury, which is not having our rights to judicial review, the sliding scale approach lowers the amount we need to show success on the merits. And are you, do you read TIFA as having concluded that your right to judicial review is the irreparable harm that you were saying? That's what I read it as that. I do not, I think that the talking about the reimbursement, I find that dicta and to be quite honest, it's not very good. But a right to judicial review isn't worth anything if there's no chance you prevail on the merits. Okay, on the third point, the third point I raised, already three cases for the Court of International Trade have determined it's unlawful for the Department of Commerce to apply the China-wide rate to a company that has established that it operates free from government control. The Sharon case, Greenfresh and TIFA. And I'm sorry, the TIFA case that came down at the CIT came down after this litigation. So at the time of the litigation, there were two cases, Greenfresh and Sharon that, you know, that shows that you cannot apply this China-wide rate to a company that established it operated free from government control. And were those all cases in which the Commerce had found that the company, the Chinese exporter, had made false statements? Well, the best case for that would be Greenfresh. And never mind the best case. Were those cases comparable to your cases? I would say the Greenfresh is comparable. We can't rely on the figures that you have presented to us because they're false. I mean, it seems to me it's a quite different situation where you say you can't rely on the information submitted by the exporter. In Greenfresh, there was also misconduct. But as in Greenfresh, in this case, it was the DLC made a preliminary determination that the company operated free from government control. Now, all the information, the false information provided had nothing to do with the government control. It only was limited to market price. The purchase of market economy inputs had nothing to do with the company's status as a separate rate company. The company who submits false information may be thought to be unreliable and therefore you can't accept other information they've submitted. That is a possibility. But then I would say that the Department of Commerce has to make findings. What the Department of Commerce did, in my view, was make just a conclusionary statement without looking at what was submitted and what was, you know, information that was submitted that was tainted and other information that was submitted that was never contested. Thank you, Mr. Whistler. Mr. Eikenson has a little rebuttal time. Your Honor, if I may, with regard to counsel's last comment, I've been practicing for 41 years. I have never seen a statement from the Commerce Department showing findings of fraudulent submissions and false submissions as detailed and as extensive as in the Issues and Decisions Memorandum in this case and the AFA Memorandum, the Adverse Facts Available Memorandum. Additionally, Mr. Whistler talks about several cases that were not cited in his brief, but in any event, our case is different because the China-wide rate that Commerce is using is a rate that was based on a calculated rate for a Chinese company and that is the rate that has been applied to Sense Hardware. With regard to the other issues regarding mootness, first I would say that the current review, the fourth review which has been deferred by Sense Hardware, is likely to be finished in perhaps March of 2011. Possibly, if an extension is not sought, it will be January. The reason I say this is because in every review thus far, the reviews have completed in March because of the extensions of time that the department has taken. So there's ample time for Sense Hardware to get what in its view would be a correction of the rate and change the deposit rate. It won't be moot for that purpose. But separate and apart from that, counsel of the Justice Department and Mr. Whistler are ignoring the Torrington case in which this court has recognized that issues survive. They are not moot because they're capable of being repeated. This is a prominent principle in our law. And if Sense Hardware is not complaining about loss of money to it, but loss of the right to review, it is not losing its right to review. Every single issue that Mr. Whistler discussed with you, it can litigate even after the liquidations occur, even after the fourth review is concluded. Because these are issues that will not go away. I think I'm... I have a few seconds. And lastly, with respect to the government's argument about the sufficiency of stating a claim. This court in one of the Abbott laboratory cases where the court reviewed or surveyed the rulings of the circuit courts throughout the country. And it was a very, very instructive opinion for the bar. And it explained that there is a difference between stating a claim which is sufficient for a good pleading and stating a claim which goes beyond stating the claim, but demonstrate a likelihood of success on the merits. And for the government to say that it's acceptable to us just to see that there's a stated claim, that really is bending the law of injunction, certainly from this court and the United States Supreme Court. Isn't the real question on that, how extensively the trial court must explain the reasons for its conclusion that the substantial claim has been made? Well, but the court didn't do that. The trial court here simply talked about sliding scale. And again... Well, the court said a little more than that. It said a couple of things. It may not have been as detailed as we would prefer, but it didn't just say, we think he stated a claim purely. It gave some explanation. That's true. The trial court said, this case is the same as in the King Dow TAFA case, but it isn't. The facts are different. In King Dow TAFA, the Commerce Department used a rate that was 383% duty rate, which was the rate from the petition. That was the rate that Commerce felt it needed to use. In our case, we have a different situation. In our case, we encourage the department to use the calculated margin for another company. And additionally, in TAFA, as this court said, the parties really didn't address the legal authorities and they couldn't direct us one way or the other as to whether it was a good claim or not. In our case, we took pains to cite to all the relevant legal authorities in our judgment, administrative, judicial, and statutory. The other side was silent about that. Thank you, Mr. Rikenson. The case will be taken under advisement.